UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number:  13-23882-CIV-MORENO

ANDRES GOMEZ,

     Plaintiff,

vs.

DADE COUNTY FEDERAL CREDIT UNION,

     Defendant.

_____/

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Plaintiff Andres Gomez filed a lawsuit against Defendant Dade County Federal Credit Union, alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA").  Plaintiff seeks a declaratory judgment that Defendant is in violation of the ADA and a permanent injunction directing Defendant to bring its automatic teller machines (ATMs) into full compliance with the appropriate ADA regulations, and requests that the Court retain jurisdiction to ensure Defendant remains in compliance through periodic monitoring; an order certifying the class proposed by Plaintiff; and payment of costs and attorneys' fees.

For the reasons provided below, the Court finds that Defendant's Motion to Dismiss **(D.E. No. 15)** is granted pursuant to Fed. R. Civ. P. 12(b)(1) due to lack of standing under Article III of the Constitution.  This action is dismissed without prejudice.

### I. Discussion

Plaintiff is a legally blind individual who visited one of Defendant's ATMs located at 1801 N.W. 9th Avenue, Miami, Florida 33136 (the "Subject ATM").  The Subject ATM is located roughly one mile from his home.  Plaintiff alleges that the Subject ATM is inaccessible to the blind due to

the lack of a functional voice-guidance feature, in violation of Title III of the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.  Specifically, Plaintiff claims the lack of a functional voice-guidance feature violates Section 707.5 of the 2010 Standards for Accessible Design, rules promulgated by the Department of Justice to implement Title III of the ADA. He further alleges he will continue to attempt to use the Subject ATM, as well as other ATMs in Defendant's network, because they are convenient and within the geographic zone he typically travels, but due to their inaccessibility and Defendant's lack of a policy to ensure its ATMs are ADA-compliant, he cannot successfully use them.

Defendant seeks to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing under Article III of the United States Constitution, and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Because the Court finds Plaintiff lacks Article III standing, it will not address Defendant's 12(b)(6) argument.

## II. Legal Standard

"Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of the parties' claims." U.S. Const., Art. III, § 2, cl.1; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Further, "standing must be determined as of the time at which the plaintiff's complaint is filed." *Focus on the Family v. Pinella Suncoast Transit Authority*, 344 F.3d 1263, 1275 (11th Cir. 2003).

Standing requires the following three elements: (1) the plaintiff must have suffered a "concrete and particularized" and "actual or imminent" injury-in-fact of a legally protected interest; (2) there must be a causal connection between the plaintiff's injury and the defendant's conduct; and (3) it must be likely that the injury will be redressed by a favorable decision. *Id.*  With respect to the

first element, because Plaintiff is suing Defendant for injunctive relief, he must also allege "a real and immediate - as opposed to a merely conjectural or hypothetical - threat of *future* injury." *Wooden v. Board of Regents of University Sys. of Geo.*, 247 F.3d 1262, 1284 (11th Cir. 2010) (emphasis by the Court). In ADA cases, the plaintiff must allege "a concrete and realistic plan of when he would visit" the public accommodation again. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1340 (11th Cir. 2001); *see also Wooden*, 247 F.3d at 1284 (the plaintiff "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future."); *City of Los Angeles v. Lyons*, 461 U.S. 95, 118 n.8 (1993) ("It is the reality of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions.").

Plaintiff bears the burden of establishing his standing to sue Defendant for injunctive relief. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005). If the Plaintiff fails to meet this burden, the Court lacks jurisdiction. *Miccosukee Tribe of Indians of Florida v. Florida State Athletic Com'n*, 226 F.3d 1226, 1230 (11th Cir. 2000). Article III's standing requirements apply equally to ADA cases. *Norkunas v. Seahorse NB, LLC*, 444 Fed. Appx. 412, 415 (11th Cir. 2011).

Challenges to Article III standing constitute a factual attack on subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). This claim challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). If a factual attack is made, the Court may weigh evidence, including testimony and affidavits, and no presumptive truthfulness attaches to plaintiff's allegations. *Garcia v. Copenhaver, Bell & Associates, M.D. 's, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997).

### III. Analysis

The Court finds Plaintiff lacks Article III standing. Plaintiff has failed to satisfy the first

element of standing where he has insufficiently alleged a "real and immediate . . . threat of *future injury*." *Wooden*, 247 F.3d at 1284 (emphasis in original).[1]

Because standing is determined as of the time the complaint is filed (*see Focus on the Family*, 344 F.3d at 1275), the Court focuses on Plaintiff's standing on October 25, 2013. In his Complaint, Plaintiff's allegations regarding future harm are as follows:

- The Subject ATM is within the geographic zone that Plaintiff typically travels as part of his everyday activities. The Subject ATM is located approximately one (1) mile from Plaintiff's home. Plaintiff will continue to visit the Subject ATM in the future as part of his effort to locate accessible ATMs that he personally can use within the geographic zone that he typically travels as part of his regular activities, and on behalf of the blind community, generally. [D.E. 1 at ¶ 10].
- Plaintiff will continue to attempt to use the Subject ATM because he wants to identify convenient accessible ATM options within the geographic zone that he typically travels as party of his everyday activities, and he wants to increase ATM accessibility for the blind community, generally. However, so long as the Subject ATM continues to violate Section 7, Plaintiff will be unable to use it independently and will be, thereby, deterred from visiting it. [D.E. 1 at ¶ 43].
- Based upon an investigation performed on Plaintiff's behalf, Plaintiff has actual notice that additional ATMs in Defendant's ATM network are similarly in violation of Chapter 7 of the 2010 Standards. Plaintiff would visit these additional ATMs but for the violations of which he has actual notice. [D.E. 1 at ¶ 44].
- Though Defendant has centralized policies regarding the management and operation of its ATMs, Defendant does not have a plan or policy that is reasonably calculated to cause its ATMs to be in timely compliance with Chapter 7 of the 2010 Standards, as is demonstrated by the fact that its network remains out of compliance. [D.E. 1 at ¶ 45].

These allegations in large part focus on the Subject ATM, and contain more generalized references to "additional ATMs" that are not ADA-compliant. If the Subject ATM was indeed non-compliant, and Plaintiff intends to continue using the Subject ATM where it is one mile from his home and

---

[1] Defendant argues in its Motion to Dismiss that Plaintiff's Complaint should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) on grounds of mootness. The Court does not address that claim here. As discussed below, Plaintiff has failed to satisfy the first element of standing in seeking injunctive relief, specifically with respect to alleging a real and immediate threat of future injury.

within his "geographic zone," this would be sufficient to allege an injury-in-fact as Plaintiff provides factual support relating to a specific violation.

That, however, is not the case as Plaintiff has readily conceded in his Opposition to the Motion to Dismiss that, upon a February 27, 2014 visit to the Subject ATM, the voice guidance feature was fully functional. [D.E. 18 at 3].

Moreover, to support its factual attack on subject matter jurisdiction, Defendant attaches to its Motion to Dismiss several employee affidavits describing the Subject ATM - and all ATMs in Defendant's network - as compliant both before and after Plaintiff's July 21, 2013 visit. *See* D.E. 15-2 (Affidavit of Marla Ferreira at ¶¶ 6-7; Affidavit of Roberto Plasencia at ¶¶ 4-7; Affidavit of Stephanie Miles at ¶¶ 5-10; October 7, 2013 Subject ATM Report; Affidavit of Trayon Gaskins at ¶¶ 4-7; April 24, 2013 Subject ATM Report). Thus, with respect to the Subject ATM, Plaintiff has failed to allege a real and immediate threat of future violation.

Consequently, any alleged *future* injury must relate to these "additional," purportedly non-compliant ATMs in Defendant's network. However, Plaintiff provides no support in his Complaint for this assertion other than a conclusory statement that an "investigation performed on Plaintiff's behalf" conveyed "actual notice" that other ATMs are similarly in violation. [D.E. 1 at ¶ 44]. Without supporting facts, and faced with affidavits asserting that the Subject ATM and other ATMs in Defendant's network are ADA-compliant, such naked assertions "are not entitled to the assumption of truth." *E.g., Ashcroft v. Iqbal*, 556 U.S. 662, 664-78 (2009) ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Plaintiff, therefore, has failed to allege a real and immediate threat of future injury with respect to throughout Defendant's network.

In his Opposition to the Motion to Dismiss, Plaintiff attempts to bolster his argument regarding these "additional" non-compliant ATMs, and alleges that after visiting the properly-functioning Subject ATM, he subsequently visited another ATM at 10900 North Kendall Drive (the "Kendall ATM"). [D.E. 18 at 3]. The Kendall ATM is located approximately 16 miles from the Subject ATM. Plaintiff alleges he could not complete a transaction at the Kendall ATM because the voice guidance stopped functioning during the course of the transaction. *Id.* Plaintiff points to the Kendall ATM's failure as evidence of Defendant's "institutional failure to achieve and maintain ADA accessibility throughout its entire network," and that "while the violation of the Subject ATM . . . may have been remedied, compliance failures persist within Defendant's ATM Network." [D.E. 18 at 11-12]. He further alleges in the Opposition that he intends to continue visiting the Kendall ATM. [D.E. 18, Affidavit of Gomez at ¶ 11].

However, standing is determined as of the time at which the plaintiff's complaint is filed, and therefore cannot be created by conduct four months later involving an ATM of which Plaintiff had no knowledge on October 25, 2013. *See Focus on the Family*, 344 F.3d at 1275; *Harty v. SRA/Palm Trails Plaza, LLC*, 755 F. Supp. 2d 1215, 1217 (S.D. Fla. 2010) (holding courts in the Eleventh Circuit are "more cautious" in conferring standing for ADA challenges, and require actual knowledge when the complaint is filed of particular barrier to have standing to challenge those barriers). The Court therefore addresses the allegations regarding the Subject ATM - the only ATM to which Defendant specifically refers in the Complaint - and not the Kendall ATM.

Moreover, even were the Court to consider Plaintiff's recent allegations regarding the Kendall ATM, Plaintiff has not met his burden of demonstrating a "concrete and realistic plan" to return to the Kendall ATM, and therefore has not sufficiently alleged a "real and immediate" threat

of future injury to satisfy the first element of standing in seeking injunctive relief. *Wooden*, 247 F.3d at 1284; *Houston*, 733 F.3d at 1340. To assess the threat of future ADA violations in the context of standing, the Eleventh Circuit employs a "totality of circumstances" test, and has looked to the following factors as relevant: (a) proximity of the public accommodation to plaintiff's home; (b) plaintiff's past patronage of defendant's accommodation; (c) the definiteness of plaintiff's plan to return to defendant's accommodation; and (d) the frequency of plaintiff's travel near defendant's accommodation. *Id.* at 1337.

With respect to the "past patronage" and "frequency of nearby travel" factors, neither the Complaint nor Opposition contains a single allegation that Plaintiff sought to access the Kendall ATM prior to filing the lawsuit. With respect to the "definiteness" factor, Plaintiff's sole allegation regarding the Kendall ATM is that he "intends to continue to visit the Subject ATM *and the other ATM identified above* because they are near my home and convenient for me to use." [D.E. 18, Affidavit of Gomez at ¶ 11] (emphasis added). With respect to the "proximity" factor, the Kendall ATM is located roughly 16 miles from Plaintiff's home. This distance, by itself, does not demonstrate Plaintiff's inability to allege a future violation, but the Court also notes Plaintiff has failed to provide any support as to why the Kendall ATM is "convenient."[2] When considered in

---

[2] Plaintiff filed a Notice of Supplemental Authority [D.E. 20] citing to a recent decision in the District of Minnesota, *Sawczyn v. BMO Harris Bank National Association*, No. 13-2309 (D. Minn. Mar. 19, 2014), wherein the District Court considered the same four factors to assess the threat of future violations. In finding that the "proximity" and "frequency of nearby travel" factors weighed in favor of standing, the Court relied in part on the plaintiff's factual allegations that he frequented the area to visit restaurants and shops, and that he traveled to the area to visit friends and attend outreach events. *Id.* at *6. Here, Plaintiff has provided no such factual support, and as noted above presumably did not know of the Kendall ATM's existence when he filed this action. The facts in *Sawczyn* are further distinguishable where: (a) the plaintiff in that case visited *two* non-compliant ATMs and included facts regarding each visit in his complaint; (b) each ATM remained non-compliant; and (c) the plaintiff alleged in his complaint that he visited each ATM in the past, thereby supporting his intent to return.

totality with the remaining factors, and in light of Plaintiff's recent admission that he now has a working ATM within one mile of his home - the same ATM that formed the basis of his Complaint - the Court finds Plaintiff has failed to meet his burden of demonstrating both a "real and immediate threat of future injury," and a "concrete and realistic plan" to return to the Kendal ATM. *See Lamb v. Charlotte County*, 429 F. Supp. 2d 1302, 1309-10 (finding plaintiff lacked standing under ADA where, *inter alia*, his contact with the property was infrequent, there were other facilities closer to his home, and there were no immediate or concrete plans to return other than a nonspecific "wish" to return).

### IV. Conclusion

Accordingly, Defendant's Motion to Dismiss is GRANTED as Plaintiff lacks Article III standing. Plaintiff's Complaint is dismissed without prejudice, with leave to file an amended complaint by **April 8, 2014**. If Plaintiff fails to file an amended complaint by the deadline, the Court may close the case.

DONE AND ORDERED in Chambers at Miami, Florida, this _____ day of March, 2014.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record

-8-